UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN DOE,

Plaintiff,

v.

TRUSTEES OF HAMILTON COLLEGE,

Defendant.

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**

Civil Action No. 6:22-CV-0214 (DNH/ATB)

Defendant Trustees of Hamilton College ("Hamilton") submits the following Statement of Material Facts, as to which there is no genuine dispute, in support of its motion for summary judgment dismissing the claims of Plaintiff John Doe ("Doe") in their entirety and with prejudice:

**A. The Parties**

1. Doe is a former student of Hamilton. *Complaint*, ¶ 4; *Answer*, ¶ 4.

2. Hamilton is a private liberal arts college located in Clinton, New York. *Complaint*, ¶ 5; *Answer*, ¶ 5.

**B. Hamilton's Sexual Misconduct Policy**

3. During the 2020-2021 academic year, Hamilton maintained a Sexual Misconduct Policy (the "Policy") to address complaints of members of the Hamilton community (i.e., students, faculty, and staff) who believed they were victims of sexual misconduct. Declaration of Catherine Berryman, executed November 14, 2023 ("*Berryman Decl.*"), ¶ 9 and Ex. A.

4. The Policy defined conduct that constituted sexual misconduct at Hamilton. *Berryman Decl.*, Ex. A.

5. The Policy provided procedures through which Hamilton responded to claims of sexual misconduct. *Berryman Decl.*, ¶¶ 9-23 and Ex. A.

### C. The Policy's Investigation and Hearing Procedures

6. Pursuant to the Policy, Hamilton employs an "investigation and hearing model" to resolve complaints of sexual misconduct, under which complaints are investigated by an investigator and adjudicated during a hearing by a Review Panel comprised of members of Hamilton's Sexual Misconduct Board and a Hearing Officer. *Berryman Decl.*, ¶ 9.

7. For each complaint that proceeds through the formal resolution procedures, at the outset, Hamilton's Title IX Coordinator meets with the complainant and the respondent separately, explains the procedures and provides both parties with a notice of the complaint and a copy of the Policy. *Berryman Decl.*, ¶ 11.

8. During the initial meeting with the parties, the Title IX Coordinator explains their rights under the Policy, including their right to be assisted by an advisor of their choice. *Berryman Decl.*, ¶ 11 and Ex. A, pp. 27-33.

9. The assigned investigator is responsible for interviewing the parties and any witnesses and for collecting and maintaining any records, documents, or other items relevant to the investigation. *Berryman Decl.*, ¶ 13.

10. The parties are "invited to offer and/or identify all information they would like the Investigator(s) to review, and both [could] recommend witnesses and submit information for consideration, including proposed questions to be posed by the Investigator[s] to parties and witnesses." *Berryman Decl.*, ¶ 13 and Ex. A, p. 29.

11. During the 2020-2021 academic year, the Investigator recorded all interviews with the parties and witnesses, which were then transcribed into a written transcript by a transcription service. *Berryman Decl.*, ¶ 14.

12. Each person that was interviewed by the investigator was provided with the opportunity to review the written transcript of their interview, to make revisions or clarifications, and to affirm the veracity of the information included in the transcript. *Berryman Decl*., ¶ 14 and Ex. A, p. 29.

13. The transcripts, including any revisions or clarifications of the interviewed person, are incorporated into the investigative report as appendices to the report. *Berryman Decl*., ¶ 14.

14. At the conclusion of the investigation, each party is provided with an opportunity to review an initial investigative report, which includes all interview transcripts and evidence collected by the Investigator. *Berryman Decl*., ¶ 15 and Ex. A, p. 29.

15. The parties have ten (10) days to respond to the initial investigative report and, in the event additional information is provided by either party in response to the initial investigative report, such information is shared with the other party, who is provided with a further opportunity to respond. *Berryman Decl*., ¶ 15 and Ex. A, pp. 29-30.

16. Following this review and comment period, the investigator completes a final investigative report, which includes all interview transcripts, evidence collected and the parties' comments on the initial investigative report. *Berryman Decl*., ¶ 16.

17. The parties are provided with access to the final investigative report to use in preparation for the hearing. *Berryman Decl*., ¶ 16.

18. A Review Panel comprised of two members of Hamilton's Sexual Misconduct Board and a Hearing Officer is convened to preside over the hearing. *Berryman Decl*., ¶ 17.

19. Prior to holding the hearing, the members of the Review Panel and the Hearing Officer are provided with the final investigative report, including all appendices. *Berryman Decl*., ¶ 17 and Ex. A, p. 30.

20. The Title IX Coordinator and the Hearing Officer hold a pre-hearing conference is each party and their advisor, during which they review applicable procedures, ground rules, and address any questions in advance of the hearing. *Berryman Decl.*, ¶ 18 and Ex. A, p. 31.

21. During the hearing, the parties have the opportunity to present opening and closing statements and the Review Panel (including the Hearing Officer), and each party has the opportunity to question or cross-examine the parties and any witnesses. *Berryman Decl.*, ¶ 19, and Ex. A, p. 31.

22. The formal rules of evidence do not apply to the hearing, and any information that the Hearing Officer determines to be relevant can be considered, including hearsay, history and information indicating a pattern of behavior, and character evidence. *Berryman Decl.*, ¶ 20 and Ex. A, p. 31.

23. The Hearing Officer is responsible for addressing evidentiary concerns prior to or during the hearing. *Berryman Decl.*, ¶ 20 and Ex. A, p. 32.

24. The members of the Review Panel and the Hearing Officer are ultimately responsible for determining whether the respondent violated the Policy by applying a preponderance of the evidence standard. *Berryman Decl.*, ¶ 21 and Ex. A, p. 33.

25. If the Review Panel determines that the respondent violated the Policy, the Title IX Coordinator invites each party to submit an impact statement to be provided to the Review Panel and the Hearing Officer for consideration when recommending and determining an appropriate sanction. *Berryman Decl.*, ¶ 21 and Ex. A, p. 34.

26. The Review Panel prepares a written determination, including a determination of the charges that were adjudicated; a description of the procedural steps taken from the submission of the formal complaint through the determination; findings of fact supporting the determination;

conclusions regarding the application of the Policy to the facts; a statement of, and rationale for, the result as to each allegation, including the determination regarding responsibility and any disciplinary sanction to be imposed on the respondent; and the procedures and permissible bases for the complaint and respondent to appeal. *Berryman Decl.*, ¶ 22 and Ex. A, pp. 35-36.

27. The Policy sets forth a range of potential sanctions from a warning to expulsion from Hamilton. *Berryman Decl.*, ¶ 23 and Ex. A, p. 34.

**D. The Policy's Appeal Procedures**

28. Pursuant to the Policy, complainants or respondents can appeal from a determination of the Review Panel within seven (7) days of being informed in writing of the determination appealed from. *Berryman Decl.*, ¶ 76; *Marcus Decl.*, ¶ 8.

29. Appeals are addressed by Hamilton's Appeals Board, which is tasked with ascertaining that the proceedings of the Review Panel were conducted fairly, in accordance with applicable procedures, and without undue bias. *Marcus Decl.*, ¶ 3.

30. The role of the Appeals Board is not to substitute its own judgment for that of the original decision-making body, but rather to review the procedures by which the original decision was reached. *Marcus Decl.*, ¶ 6.

31. The Appeals Board is composed of three faculty members when addressing appeals from proceedings that arose under the Policy. *Marcus Decl.*, ¶ 4.

32. The Policy limits the applicable grounds for appeal to the following:

- An imposed sanction is inconsistent with the severity of the violation or otherwise inappropriate;
- A procedural irregularity affected the review panel's determination or the determination regarding dismissal;

- A conflict of interest or bias (generally for or against complainants or respondents or individually for or against a party) on the part of the Title IX Coordinator, investigator, hearing officer, or review panel member that affected the review panel's determination or the determination regarding dismissal; or
- The discovery of new evidence that was not reasonably available at the time the determination regarding responsibility, sanction, or dismissal was made that could affect the review panel's determination or the determination regarding dismissal.

*Marcus Decl.*, ¶ 9.

33. After reviewing a permissible appeal, the Appeals Board can uphold the original decision; alter the decision; remand the matter to the Review Panel; remand the matter to the Review Panel with a recommendation that the sanction be modified; remand the matter to the Title IX Coordinator for reinstatement of a dismissed complaint or allegation; or remand the matter to an ad hoc review panel composed of a new hearing officer and members of the SMB not previously involved in the matter. *Berryman Decl.*, ¶ 78 and Ex. A, p. 37; *Marcus Decl.*, ¶ 10.

34. An appeal is decided based on the majority vote of the Appeals Board members. *Marcus Decl.*, ¶ 11.

35. The Chair of the Appeals Board provides the parties, the Chair of the SMB, and the Title IX Coordinator written notice of its decision, including grounds for the decision. *Marcus Decl.*, ¶ 12.

36. Decisions of the Appeals Board are final. *Berryman Decl.*, ¶ 78 and Ex. A, pp. 37-38; *Marcus Decl.*, ¶ 12.

**E. The Roe-Doe Investigation**

37. On October 2, 2020, Rachel Brimmer, a resident assistant in the North Hall residence hall, notified Ms. Berryman that Jane Roe had reported to her on October 2 that Doe engaged in sexual misconduct against Roe. *Berryman Decl.*, Ex. B.

38. Ms. Berryman met with Roe on October 5, 2020, at which time Roe alleged that Doe forcibly kissed her and touched her in a sexual manner without her consent on the night of October 2, 2020 both in a residence hall room and in a bathroom. *Berryman Decl.*, ¶ 25.

39. On October 6, 2020, Roe informed Ms. Berryman that she wanted to proceed with a formal complaint against Doe, and subsequently provided Ms. Berryman with a formal written complaint. *Berryman Decl.*, ¶ 27 and Ex. C.

40. On November 10, 2020, Ms. Berryman requested that Doe meet with her on November 11, 2020, via Zoom to discuss the report that she had received from Roe. *Berryman Decl.*, ¶ 28.

41. On November 11, 2020, Ms. Berryman met with Doe (the "November 11 Meeting") and provided him with a written notice of complaint, a copy of the Policy, and a copy of Roe's written complaint. *Berryman Decl.*, ¶ 28, 32 and Ex. D.

42. During the November 11 Meeting, Ms. Berryman informed Doe orally and via the notice of complaint that he was charged with violating the Policy by committing five violations of three separate provisions of the Policy, including the following:

- Roe alleged that on October 2, 2020, Doe touched Roe's buttocks and vagina forcibly or against her will in room 401 of North residence hall of Hamilton, which, if true, constituted Title IX Non-Consensual Sexual Contact under the Policy.

- Roe alleged that on October 2, 2020, Doe kissed her, hugged her and/or bit her ear without her affirmative consent in room 40 of North residence hall of Hamilton, which, if true, was Non-Title IX Non-Consensual Contact under the Policy.
- Roe alleged that on October 2, 2020, Doe grabbed her buttocks, breasts, and vagina and pressed his erect penis against her buttocks in the fourth-floor bathroom of North residence hall of Hamilton, which, if true, constituted Title IX Non-Consensual Sexual Contact under the Policy.
- Roe alleged that on October 2, 2020, Doe kissed her without her affirmative consent in the fourth-floor bathroom of North residence hall of Hamilton, which, if true, amounted to Non-Title IX Non-Consensual Sexual Contact under the Policy.
- Roe alleged that on October 2, 2020, while near the basketball courts next to Babbitt Pavilion, he engaged in unwelcome conduct of a sexual nature by grabbing Roe's wrists, pulling her away from the group of gathered students, repeatedly hugging her, refusing to let her go despite her demands, and sending her multiple electronic messages after she told him that she did not want him communicating with her, which, if true, amounted to Non-Title IX Sexual Harassment under the Policy.

*Berryman Decl.*, ¶ 29 and Ex. D.

43. The notice of complaint informed Doe that Hamilton was commencing an investigation into whether he violated the provisions of the Policy and that Michael Stackow, an attorney at the law firm of Cozen O'Conor, would be conducting the investigation. *Berryman Decl.*, ¶ 30.

44. The notice of complaint informed Doe of his opportunity to participate in the investigation by participating in one or more interviews and sharing information with Mr. Stackow, and by identifying witnesses for him. *Berryman Decl*., ¶ 31 and Ex. D.

45. The notice of complaint informed Doe of his right to an advisor to accompany him to meetings during the investigation and resolution process. *Berryman Decl*., ¶ 31 and Ex. D.

46. Doe retained Attorney Michael G. Santangelo to serve as his advisor. *Berryman Decl*., ¶ 32.

47. Ms. Berryman issued mutual no contact orders, instructing both Roe and Doe not to have contact with each other during the pendency of the investigation. *Berryman Decl*., ¶ 26.

48. During the investigation, Roe told the investigator that:

> …So I'm sitting in the stall and I can see him walk up, I can see his shoes under the stall door, and he knocks on the stall and he's like, "I know you're in there [Roe]." So I was like, "Oh shit. This is really, really bad." So I'm sitting in the stall and I'm like, you know what, just play cool, just pretend that nothing's weird, just don't show him that you're scared. Because at this point I was like, as corny as it sounds, at this point I was like, okay, I'm very much like the prey, he's the predator, don't show him that he's affecting you. So I peed, flushed the toilet, left the stall, and I kind of looked at him and I was like, "What are you doing here?"
>
> Like trying to keep the conversation going and keep it casual, whatever. And I lean over the sink to wash my hands, and he came up behind me, grabbed my butt again, and then he moved his hands up to my chest like he did before. So he went up and grabbed my chest, and he ground his private area against my butt, and I could feel that he was aroused. And so I turned around and I still kept it fairly conversational. I was like, "Stop." Like, "Stop." So I was so in my head thinking, don't show him that you're scared, don't show him that you're freaked out, you just got to get out of the bathroom, get back to [M.L.'s] room, you're fine. You can get back to [M.L.'s] room, you're okay. So I dried my hands with the paper towels and walked out…
>
> …as I was about to grab the door and walk out, he grabbed my hips and pushed me up against the wall. And that's when things got really bad and I actively was like, "Okay, get off of me. I have to go back to my friends."
>
> He was kissing me, and I was talking the entire time. He just kept trying to kiss me and I was still talking, I was like, "Get off. I have to go back to

> my friends. Get off, get off." So he just started touching all over my body with his hands, and I put my hands on his shoulders and tried to push him off me. But he was kind of pinning me. He pushed my arms down and was pinning me against the wall with the rest of his body, like his hip pelvis area, I suppose. He was leaning really hard into me and had my hands down by my side. And I kept trying to shimmy out of it, just get out of it, and I kept saying stop. And then he was, at this point, his hands were under my shirt so he started grabbing skin, and he was rubbing my vaginal area really aggressively through my pants. And that's when I started crying, and he just kept going, kept doing what he was doing and I was crying, and I was saying, "Get off, get off. I have to go."
>
> And I kept trying to push him off of me, but my hands were pinned. So then he took one of his hands and he put it around my throat and pushed against the wall, and then with his other hand started unbuttoning my jeans and trying to put his hand down my pants. And I was absolutely terrified. I very seriously thought that I was going to get raped in the bathroom and that would be how my night went. And so I was sobbing and trying to get him off of me, but it almost got to the point where I was giving up a little bit. I was kind of like, "All right, well I guess it's going to happen." But I was sobbing and I kept telling him to stop, but in my mind I was losing hope a little bit. And then lo and behold, my friend [AS] opens the door. And we were close enough, I was so close to getting out that, like she opens the door and it hits him and knocks him off of me…then I ran out of the bathroom…

*Berryman Decl., Ex. F*, at HC2281-82.

49. Ms. Berryman contacted Doe when the written transcripts of his two interviews were available and advised him of his opportunity to review the transcripts and provide any revisions or clarifications and to affirm the veracity of the information in the transcript. *Berryman Decl.*, ¶ 36.

50. Both Roe and Doe reviewed their transcripts and provided revisions and/or comments. *Berryman Decl.*, ¶ 36.

51. On or about March 19, 2021, an initial investigation report was made available to Roe and Doe to review. *Complaint*, ¶ 33; *Berryman Decl.*, ¶ 39.

52. On or about March 30, 2021, Doe provided a written response to the initial investigation report and additional pieces of evidence, including a photograph and TikTok videos. *Complaint*, ¶ 33; *Answer*, ¶ 33; *Berryman Decl*., ¶ 39.

53. On April 24, 2021, Mr. Stackow interviewed Doe regarding the additional items that he submitted with his written response to the initial investigation report. *Complaint*, ¶ 33; *Answer*, ¶ 33; *Berryman Decl*., ¶ 41.

54. Mr. Stackow concluded that the photograph and TikTok videos that Doe submitted with his written response to the initial investigation report were not relevant to the allegations in the notice of complaint and excluded them from the final investigation report. *Complaint*, ¶ 33; *Answer*, ¶ 33; *Berryman Decl*., ¶ 42.

55. Roe also submitted a written response to the initial investigation report. *Complaint*, ¶ 33; *Answer*, ¶ 33; *Berryman Decl*., ¶ 43.

56. The parties' written responses to the initial investigation report were incorporated into an updated draft report, which was provided to the parties for their review. *Complaint*, ¶ 33; *Answer*, ¶ 33; *Berryman Decl*., ¶¶ 44-45.

57. On May 28, 2021, Roe submitted a written response to the updated draft report. *Complaint*, ¶ 33; *Answer*, ¶ 33; *Berryman Decl*., ¶ 47.

58. Doe did not submit a written response to the updated draft report. *Berryman Decl*., ¶ 47.

59. A notice of hearing was issued to the parties on June 10, 2021. *Complaint*, ¶ 35.

60. A final investigation report, dated June 22, 2021, was sent to the parties. *Complaint*, ¶ 35; *Berryman Decl*., ¶ 48.

**F. <u>The Roe-Doe Hearing</u>**

61. On June 20, 2021, Ms. Berryman informed Doe of the identities of the faculty members that would serve on the Review Panel, including John Geissinger and Phil Klinkner, and identified Attorney Bryn Ms. Lovejoy-Grinnell as the Hearing Officer. *Complaint*, ¶ 36; *Berryman Decl.*, ¶ 51 and Ex. G.

62. On June 22, 2021, Doe objected to the appointment of Attorney Lovejoy-Grinnell as the Hearing Officer. *Complaint,* ¶ 36; *Berryman Decl.*, ¶ 52.

63. On June 28, 2021, Ms. Berryman informed Doe that Attorney Julia Green would be replacing Attorney Lovejoy-Grinnell as the Hearing Officer. *Berryman Decl.*, ¶ 56 and Ex. J.

64. Doe did not object to the appointment of Attorney Green as the Hearing Officer. *Berryman Decl.*, Ex. L, HC00012265.

65. On July 22, 2021, Doe and Mr. Santangelo participated in the pre-hearing conference with Ms. Berryman and Hearing Officer Green, during which Doe and Mr. Santangelo were provided with a copy of the script that Hearing Officer Green would use at the hearing. *Berryman Decl.*, ¶ 58; *Green Decl.*, ¶ 20 and Ex. A.

66. On July 23, 2021, Roe and her advisor, Attorney Naomi Shatz, participated in a pre-hearing conference, during which Roe and Ms. Shatz were similarly informed of various rules that would govern the hearing. *Berryman Decl.*, ¶ 59; *Green Decl.*, ¶ 21.

67. During the pre-hearing conference, Roe and Ms. Shatz requested that the Review Panel hear from two additional witnesses, S.T. and M.C, during the hearing. *Berryman Decl.*, ¶ 60; *Green Decl.*, ¶ 22.

68. Hearing Officer Green directed that S.T. and M.C. be interviewed by Mr. Stackow, and that a transcript of the interviews be provided to the parties for their review and comment. *Berryman*, ¶ 60; *Green*, ¶ 22.

69. Ms. Berryman agreed to Doe's request to adjourn the commencement of the hearing to enable the parties adequate time to review and comment on the interview transcripts of M.C. and S.T. in preparation for the hearing. *Berryman Decl*., ¶ 61 and Ex. K.

70. S.T. did not participate in an interview with Mr. Stackow and did not testify at the hearing. *Berryman Decl*., ¶ 60; *Green Decl*., ¶ 23.

71. M.C. was interviewed by Mr. Stackow on July 25, 2021, and a transcript of the interview was provided to the parties for their review. *Berryman Decl*., ¶ 60; *Green Decl*., ¶ 24.

72. On July 29, 2021, Doe requested that a photograph and certain TikTok videos be considered as evidence at the hearing. *Berryman Decl*., ¶ 62; *Green Decl*., ¶ 25

73. On August 11, 2021, Hearing Officer Green issued a decision denying (1) Roe's request to allow M.C.'s testimony at the hearing and (2) Doe's request to introduce the photograph and TikTok videos. *Green Decl*., ¶ 27 and Ex. C.

74. Both parties requested that Hearing Officer Green reconsider her August 11, 2021, evidentiary rulings. *Green Decl*., ¶ 36.

75. On August 20, 2021, Hearing Officer Green issued a decision denying Roe's second request for M.C. to testify at the hearing about an alleged non-consensual interaction that M.C. claimed she experienced with Doe but allowed M.C. to testify to the limited topic of her observations of Doe's level of intoxication on the night of October 2, 2020. *Green Decl*., ¶ 37 and Ex. F.

76. On August 21, 2021, Doe objected to Hearing Officer Green's August 20, 2021, ruling allowing the limited testimony of M.C. *Green Decl.*, ¶ 38 and Ex. G.

77. On August 27, 2021, Hearing Officer Green issued a decision on Doe's request that she reconsider her August 20, 2020, ruling excluding the TikTok videos and addressing Doe's August 21, 2020, objection to the limited testimony of M.C. concerning his level of intoxication. *Green Decl.*, ¶ 39 and Ex. H.

78. Hearing Officer Green denied Doe's request to allow the TikTok videos as evidence and denied Doe's objection concerning M.C.'s testimony. *Green Decl.*, ¶ 39 and Ex. H.

79. The hearing took place on August 16, August 17, September 1, and September 11, 2021. *Berryman Decl.*, ¶ 63; *Green*, ¶ 30.

80. Ms. Berryman informed the parties and their advisors that, due to the delays in commencing the hearing and a resulting scheduling conflict, Sally Cockburn would replace Phil Klinkner as a member on the Review Panel. *Berryman Decl.*, ¶ 63.

81. Neither party objected to the replacement of Phil Klinkner with Sally Cockburn. *Berryman Decl.*, ¶ 63.

82. On August 16, 2021, the Review Panel began the first day of the hearing. *Berryman Decl.*, ¶ 64; *Green Decl.*, ¶ 30.

83. Hearing Officer Green began the first day of the hearing by explaining the purpose of the hearing, informing the parties of the privacy and decorum expectations, and reading the allegations and charges that the hearing would address. *Berryman Decl.*, ¶ 64; *Green Decl.*, ¶ 31.

84. Hearing Officer Green reminded the parties that they would be given between five to ten minutes to provide an opening statement. *Berryman Decl.*, ¶ 64 and Ex. L, at HC00012268; *Green Decl.*, ¶ 31.

85. Both Roe and Doe confirmed on the record that neither had any objections to any of the members serving on the Review Panel. *Berryman Decl.*, ¶ 64 and Ex. L, at HC00012265-66; *Green Decl.*, ¶ 32.

86. Roe and Doe each delivered opening statements. *Berryman Decl.*, ¶ 64; *Green Decl.*, ¶ 33.

87. During her opening statement, Roe stated (*Berryman Decl.*, Ex. L, at HC00012269):

> The fact [is] that on October 2nd, [John Doe] groped me in [M.L.'s] room and later came into the bathroom while I was there, pinned me to the wall and sexually assaulted me.
>
> …
>
> There is nothing consensual about being pinned up against a wall with someone holding your neck while they grope you and put their hands down your pants. There was nothing consensual about trying to mentally prepare yourself to be raped.

88. During the hearing, Roe testified:

> …I initially was kind of trying to push him and he got me to stop pushing him because he pinned me and then kind of stopped grabbing at my chest and my butt and pushed my shoulders back. And then that was when he grabbed my neck with one hand.
>
> And I think that that point I like froze up a little bit because I started thinking like, oh my God, I'm literally about to be raped in this bathroom…at that point, I think I kind of started to give up a little bit because at that point I was like crying and telling him to get off. And if he wasn't doing it at that point, he wasn't going to do it at all. So I kind of started giving up and it was kind of just trying to like mentally prepare myself to, I guess like disassociate or like, I don't know, try not to be there as much as I could…

*Berryman Decl. Ex. L*, at HC12315-16.

89. During the hearing, Roe testified:

> …I started feeling like really lightheaded. I don't know if it was from having been panicking or from pressure on my trachea and not really

> being able to breathe super well, I don't know if that was because I was so freaked out or…because there was pressure there.

*Berryman Decl. Ex. L*, at HC12317.

90. Doe's advisor was allowed the opportunity to examine and cross-examine Roe. *Green Decl.*, ¶ 33.

91. The Review Panel members also posed questions to Roe. *Green Decl.*, ¶ 33.

92. Doe also testified on the first day of the hearing, and the Review Panel members posed questions to Doe. *Green Decl.*, ¶ 33.

93. At the end of the first day, Roe's advisor had not yet had the opportunity to question Doe and the hearing adjourned for the following day. *Green Decl.*, ¶ 33.

94. The hearing resumed on August 17, 2021, and Roe's advisor was provided the opportunity to cross-examine Doe. *Berryman Decl.*, ¶ 66; *Green Decl.*, ¶ 34.

95. Witnesses M.L, K.R., R.B., L.B., and J.F. provided testimony, and both parties' advisors were permitted to examine and cross-examine each witness pursuant to the Policy. *Green Decl.*, ¶ 34.

96. At the end of the second day of the hearing, the hearing was not complete, and the hearing was adjourned to September 1, 2021. *Berryman Decl.*, ¶ 66; *Green Decl.*, ¶ 35.

97. On August 28, 2021, Doe requested that an additional witness, S.K., be permitted to testify for the purpose of refuting any testimony of M.C. regarding Doe's level of intoxication on October 2, 2020. *Green Decl.*, ¶ 41 and Ex. I.

98. On August 30, 2021, Hearing Officer Green granted Doe's request to permit S.K. to testify. *Green Decl.*, ¶ 41 and Ex. I.

99. On September 1, 2021, Hearing Officer Green responded to questions from Roe's advisor about the scope of M.C.'s anticipated testimony and provided the same information to Doe. *Green Decl*., ¶ 42 and Ex. J.

100. The hearing resumed on September 1, 2021, and witnesses A.S., B.L., E.L., C.C., and M.H. testified. *Berryman Decl*., ¶ 67; *Green Decl*., ¶ 43.

101. The parties' advisors were permitted to examine and cross-examine each witness that testified on the third day of the hearing. *Green Decl*., ¶ 43.

102. The hearing was not complete at the end of the third day, and the hearing was adjourned until September 11, 2021. *Berryman Decl*., ¶ 67; *Green Decl*., ¶ 44.

103. Following the completion of the third day of the hearing, on September 1, 2021, Hearing Officer Green received an email from Doe concerning certain testimony that was offered about his reputation for truthfulness. *Green Decl*., ¶ 45 and Ex. K.

104. Hearing Officer Green responded to Doe's September 1, 2021, email on September 2, 2021. *Green Decl*., ¶ 45 and Ex. K.

105. On September 4, 2021, Doe again requested that Hearing Officer Green reconsider her decision to exclude the TikTok videos from evidence. *Green Decl*., ¶ 46 and Ex. L.

106. On September 4, 2021, Roe's advisor wrote to Hearing Officer Green raising two evidentiary concerns, including the scope of the testimony of M.C. and S.K. *Green Decl*., ¶ 47 and Ex. M.

107. On September 6, 2021, Roe requested that an additional witness, K.R., be permitted to testify at the next hearing date. *Green Decl*., ¶ 48 and Ex. N.

108. Doe was informed of Roe's request to have K.R. testify at the hearing. *Green Decl*., ¶ 48.

109. On September 9, 2021, Doe objected to the introduction of K.R.'s testimony. *Green Decl.*, ¶ 49 and Ex. O.

110. On September 9, 2021, Hearing Officer Green notified the parties that she was declining to allow an expanded scope of testimony from either M.C. or S.K, that she again was declining Doe's request to admit the TikTok videos, and that she would allow K.R. to testify, but that her testimony would be limited exclusively to her observations about Doe's level of intoxication and alcohol consumption on October 2, 2020. *Green Decl.*, ¶¶ 46, 47, 50 and Exs. L, M, P.

111. The hearing resumed on September 11, 2021, and the remaining witnesses, C.F., O.C., G.P., M.C., K.R., and S.K., were questioned by the Review Panel and the parties' advisors. *Berryman Decl.*, ¶ 68; *Green Decl.*, ¶ 51.

112. Roe and Doe were each provided with the opportunity to make a closing statement. *Berryman Decl.*, ¶ 68; *Green Decl.*, ¶ 52.

113. Prior to the closing statements, Hearing Officer Green informed the parties that their closing statements would be limited to 10-minutes each. *Green Decl.*, ¶ 52; Declaration of Suzanne M. Messer, Esq., executed November 15, 2023, Ex. A ("*Doe Depo*"), at 157:13-25; 158:1-25; 159:1-8.

114. Doe did not complete the delivery of his closing statement within the allotted ten-minute period. *Berryman Decl.*, ¶ 68; *Green Decl.*, ¶ 53.

115. The parties submitted written copies of their closing statements for the Review Panel to review and consider during its deliberations. *Berryman Decl.*, ¶ 68; *Green Decl.*, ¶ 53 and Ex. Q; *Doe Depo*., 159:9-20.

116. Doe and Roe submitted impact statements for the Review Panel to consider. *Berryman Decl.*, ¶ 70; *Green Decl.*, ¶ 54.

117. On October 18, 2021, the Review Panel issued a Notice of Determination. *Berryman Decl.*, ¶ 72; *Green Decl.*, ¶ 63.

118. The Review Panel found Doe responsible for committing Title IX Non-Consensual Sexual Contact under the Policy by touching Roe's private parts in room 401 and the fourth-floor bathroom of North Hall with his hands, and by pressing his erect penis against Roe's buttocks in the bathroom of North Hall without her consent. *Berryman Decl.*, ¶ 73; *Green Decl.*, ¶ 64 and Ex. R.

119. The Review Panel found Doe responsible for committing Non-Title IX Non-Consensual Contact under the Policy by hugging, biting, and kissing Roe in Room 401 of North Hall and repeatedly kissing Roe in the fourth-floor bathroom of North Hall, all without her consent. *Berryman Decl.*, ¶ 73; *Green Decl.*, ¶ 64 and Ex. R.

120. The Review Panel found that Doe was not responsible for Non-Title IX Sexual Harassment charge under the Policy. *Berryman Decl.*, ¶ 73; *Green Decl.*, ¶ 64 and Ex. R.

121. The Review Panel determined that the appropriate sanction for Doe was expulsion from Hamilton. *Berryman Decl.*, ¶ 73; *Green Decl.*, ¶ 67 and Ex. R.

122. On October 19, 2021, Ms. Berryman met with Doe and Mr. Santangelo via Zoom to notify them of the Review Panel's decision and provided them with a copy of the Notice of Determination. *Berryman Decl.*, ¶ 75.

**G. <u>The Doe Appeal</u>**

123. On October 25, 2021, Doe submitted a written request for appeal to the Chair of the Appeals Board Russell Marcus. *Berryman Decl.*, ¶ 79*; Marcus Decl.*, ¶ 13 and Ex. A.

124. On October 26, 2021, Doe submitted his appeal to Mr. Marcus. *Berryman Decl.*, ¶ 79; *Marcus Decl.*, ¶ 14 and Ex. B.

125. In her role as Title IX coordinator, Ms. Berryman provided the final investigation report and all materials made available to the Review Panel to the Appeals Board for its consideration on Doe's appeal. *Berryman Decl.*, ¶ 80.

126. On November 4, 2021, Roe submitted her written response to Doe's appeal. *Berryman Decl.*, ¶ 81; *Marcus Decl.*, ¶ 22 and Ex. C.

127. On November 6, 2021, Ms. Berryman responded to Doe's appeal. *Berryman Decl.*, ¶ 82; *Marcus Decl.*, ¶ 24 and Ex. D.

128. On November 7, 2021, the Appeals Board met to discuss Doe's appeal and the written responses that Roe and Ms. Berryman submitted. *Marcus Decl.*, ¶ 26.

129. The Appeals Board unanimously voted to deny Doe's appeal. *Marcus Decl.*, ¶ 27.

130. On November 13, 2021, Mr. Marcus informed Doe by email that his appeal was denied and explained the reasons for the decision. *Berryman Decl.*, ¶ 83; *Marcus Decl.*, ¶ 28 and Ex. E.

131. The decision of the Appeals Board was the last step in the resolution of the case under the Policy. *Berryman Decl.*, ¶ 84.

132. As a result of the finding of responsibility under the Policy and the associated sanction, a notation was placed on Doe's academic transcript that stated that he was "expelled after a finding of responsibility for a code of conduct violation." *Berryman Decl.*, ¶ 85.

Dated: November 15, 2023

BOND, SCHOENECK & KING, PLLC

By: *_/s/Suzanne M. Messer_*
Jonathan B. Fellows
Suzanne M. Messer
Collin M. Carr
Office and P.O. Address
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8000

*Attorneys for Defendant*
*Trustees of Hamilton College*